UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| A-1 National Fire Co. LLC, | Case No. 20-cv-1706 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY** |
| Freedom Fire LLC et al., | |
| Defendants. | |

This matter is before the Court on Plaintiff's motion for a temporary restraining order and expedited discovery. (Dkt. 8.) Plaintiff seeks an order (1) enjoining Plaintiff's former employees from violating the confidentiality, nondisclosure, nonsolicitation and noncompetition provisions of their employment contracts[1] with Plaintiff; (2) enjoining Defendants from misappropriating Plaintiff's trade secrets; (3) enjoining Plaintiff's former employees from working with or otherwise helping Defendant Freedom Fire LLC; (4) directing Defendants to return all property and information of Plaintiff to Plaintiff's counsel; and (5) permitting Plaintiff to conduct expedited discovery. For the reasons addressed below, the Court denies Plaintiff's motion.

## BACKGROUND

Plaintiff A-1 National Fire Co. LLC (A-1), is a Delaware limited liability company with offices in Houston, Texas; Reno, Nevada; and Ramsey County, Minnesota.

---

[1] Defendant Freedom Fire LLC does not have an employment contract with Plaintiff A-1 National Fire Co. LLC.

Defendant Freedom Fire LLC (Freedom Fire) is a limited liability company headquartered in Harris County, Texas.  Both A-1 and Freedom Fire are in the business of installing and maintaining commercial and residential fire protection systems and providing associated inspections, testing and maintenance.  Defendants Gary Lynn Roberson, Keith Howard Lompe, Michael Raymond Nelson and Luis Rodolfo Levario (Former Employees) are residents of Texas and former employees of A-1.  On November 5, 2018, the Former Employees each signed a contract with A-1 containing the disputed provisions at issue in this action (Employment Agreements).  Roberson was employed by A-1 as a fire alarm security manager until his resignation on July 17, 2020.  Lompe was employed by A-1 as a fire alarm technician, salesperson and designer until his resignation on June 19, 2020.  A-1 employed Nelson as a technician until he took a leave of absence on June 29, 2020, and his employment subsequently was terminated through abandonment when he failed to respond to A-1's calls.  A-1 also employed Levario as a safety technician until his resignation on approximately July 11, 2020.  As part of their employment, each of the Former Employees interacted with A-1's customers.

On July 30, 2020, A-1 commenced this action against Freedom Fire, Lompe, Roberson, Levario and Nelson in the Ramsey County District Court, Second Judicial District, alleging breach of contract, misappropriation of trade secrets and breach of a common law duty of confidentiality against the Former Employees.  A-1 also alleges a claim of tortious interference with prospective economic advantage against all defendants, and a claim of tortious interference with contract against Freedom Fire.  On August 5,

2020, Defendants removed the case to this Court, based on diversity jurisdiction.  28 U.S.C. § 1332.

## ANALYSIS

### I.      Personal Jurisdiction

As a threshold matter, Defendants argue that, because this Court lacks personal jurisdiction over Defendants, the Court cannot address the merits of A-1's motion.  A federal court must first determine whether it has personal jurisdiction over the parties. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (observing that personal jurisdiction is a "threshold issue for the Court") (internal quotation marks omitted).  This Court cannot address the merits of A-1's action in the absence of personal jurisdiction over Defendants.

Personal jurisdiction exists when authorized under Minnesota's long-arm statute and when the exercise of personal jurisdiction complies with the requirements of due process.  *Westley v. Mann*, 896 F. Supp. 2d 775, 788 (D. Minn. 2012).  As Minnesota's long-arm statute "extends jurisdiction to the maximum limit consistent with due process," the Court need only evaluate whether the requirements of due process are satisfied.  *Id.* at 789 (internal quotation marks omitted).  Due process requires that a defendant have sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Although an analysis of personal jurisdiction typically depends on minimum contacts, no minimum contacts have been alleged here.  Instead, to establish the existence

of personal jurisdiction, A-1 relies solely on Sections 15 and 16 of the Employment Agreements, which include choice-of-law and arbitration-forum-selection provisions, respectively. When personal jurisdiction is challenged, as is the case here, the plaintiff has the burden to show that jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). The Court addresses the parties' personal jurisdiction arguments as to Freedom Fire and the Former Employees, in turn.

### A.    Personal Jurisdiction Over Freedom Fire

As grounds for establishing personal jurisdiction, A-1 alleges in its complaint that "the contracts at issue in this case specifically provide for application of Minnesota law and contain forum selection clauses mandating Minnesota as the location for the resolution of any disputes relating to them." But A-1 presents not a single fact establishing that Freedom Fire is a party to the Employment Agreements at issue. Because A-1's complaint solely relies on the Employment Agreements to establish personal jurisdiction, and nothing in the record indicates that Freedom Fire is a party to these agreements, A-1 fails to allege that this Court has personal jurisdiction over Freedom Fire.

At the motion hearing, A-1 argued for the first time that this Court has personal jurisdiction over Freedom Fire based on Freedom Fire's alleged tortious interference with the Employment Agreements.[2] A defendant's tortious conduct can be a basis for personal jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790 (1984). To establish personal jurisdiction based on an intentional-tort theory, a plaintiff must make a *prima facie* showing that

---

[2]    A-1 did not allege this as a basis for personal jurisdiction over Freedom Fire in either its complaint or its briefing in support of its motion for a temporary restraining order.

defendant's acts were: (1) intentional; (2) uniquely or expressly aimed at the forum state; and (3) caused harm, the brunt of which was suffered in the forum state and which the defendant knew was likely to be suffered there. *Zumbro, Inc. v. Cal. Nat. Prods.*, 861 F. Supp. 773, 782–83 (D. Minn. 1994). A-1 argues that Freedom Fire knew that A-1 has ties to Minnesota and, therefore, knew that its alleged tortious acts could cause an impact here. However, a plaintiff's forum connections cannot be attributed to a defendant because that would impermissibly allow a plaintiff's contact with the defendant and the forum to drive the jurisdictional analysis. *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (observing that a defendant's knowledge of a plaintiff's forum connections is insufficient to establish personal jurisdiction). Here, A-1 has not presented facts indicating that Freedom Fire uniquely or expressly targeted Minnesota. *Zumbro*, 861 F. Supp at 782–83. At best, A-1 has alleged that that Freedom Fire's actions caused effects in Minnesota. Because "mere effects in the forum state are insufficient to confer personal jurisdiction," *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010), A-1 fails to establish that this Court has personal jurisdiction over Freedom Fire under an intentional-tort theory.

### B.      Personal Jurisdiction Over the Former Employees

As to its claim of personal jurisdiction over the Former Employees, A-1 relies on Minnesota's long-arm statute, Minn. Stat. § 543.19, and on the choice-of-law and the arbitration-forum-selection provisions in Sections 15 and 16 of the Employment Agreements. Consequently, the Court considers whether either a contractual choice-of-law or arbitration-forum-selection provision can confer personal jurisdiction.

1.      **Choice-of-Law Provision**

A choice-of-law provision is germane to an assessment of "whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).  When combined with the other factors, a choice-of-law provision is both relevant and significant.  *Wessels*, 65 F.3d at 1434.   However, such a provision without more is insufficient to confer jurisdiction.  *Id.*  Here, the choice-of-law provision found in Section 15 of the Employment Agreements dictates that "[t]he validity, enforceability and interpretation of this agreement shall be governed by the substantive and procedural laws of the State of Minnesota."  But A-1 has not alleged that any of the Former Employees had contact with Minnesota.  As such, because the choice-of-law provision stands alone, it is insufficient to confer personal jurisdiction.  *Id.*

2.      **Arbitration-Forum-Selection Provision**

A-1 also relies on the arbitration-forum-selection provision in Section 16, which is the "Mandatory Arbitration and Class Action Waiver" section of the Employment Agreements.  This provision states that the Former Employees:

> understand and agree that, in the event there is any controversy, dispute or claim arising out of or relating in any way to this Agreement and/or [the Former Employees'] employment by SUMMIT,[3] [the Former Employees] fully waive all rights to a trial by jury and [understand and agree] that all such controversies, disputes or claims must be resolved exclusively through a final and binding arbitration before the American

---

[3]     In 2018, A-1, doing business as "Summit Companies" (Summit) acquired A-1 Fire Equipment Co., Inc., a Texas corporation.  Consequently, A-1's Employment Agreements include references to Summit.

> Arbitration Association ("AAA") venue in **Ramsey County, Minnesota**. . . . In addition, [the Former Employees] consent to submit to the jurisdiction of any court, state or federal, in the State of Minnesota for purposes of any action to enforce this Agreement to arbitrate, to maintain the status quo through an injunction pending arbitration or to enforce the decisions or award of the AAA.

A signed employment agreement that includes a forum-selection clause for arbitration is *prima facie* evidence of consent to be sued and to compel arbitration in the pertinent forum. *St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001). Moreover, a mandatory forum selection clause is presumptively valid and "should control absent a strong showing that it should be set aside." *CruiseCompete, LLC v. Smolinski & Assocs., Inc.*, 859 F. Supp. 2d 999, 1008 (S.D. Iowa 2012) (internal quotation marks omitted). But A-1 is not suing to enforce the agreement to arbitrate. Rather, A-1 seeks injunctive relief. The last sentence of Section 16 of the Employment Agreements states: "[n]otwithstanding the foregoing, this Section shall not prevent [A-1] from seeking injunctive relief against [the Former Employees] in court." But notably, this provision does not mandate a particular forum to have jurisdiction over claims for injunctive relief brought in court as opposed to arbitration.

Courts analyzing similar facts have declined to conclude that a forum-selection clause for arbitration demonstrates consent to personal jurisdiction to adjudicate claims on the merits in courts of that jurisdiction. *See, e.g.*, *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (finding that an "agreement to arbitrate in Texas [did] not necessarily constitute consent to the personal jurisdiction of Texas courts to adjudicate its claims in the first instance"); *Foster v. Device Partners Int'l*

*LLC*, No. C 12–02279, 2012 WL 6115618, at *4–5 (N.D. Cal. Nov. 21, 2012) (arbitration provision specifying that all disputes would be resolved by arbitration in San Francisco did not constitute contractual consent to personal jurisdiction in San Francisco for suit seeking adjudication of claims on the merits); *Mariac Shipping Co. v. Meta Corp.*, No. 05 Civ. 2224, 2006 WL 89939, at *3 (S.D.N.Y. Jan. 12, 2006) ("While an agreement to arbitrate in a given venue at least arguably constitutes a consent to personal jurisdiction in that venue for the purpose of enforcing the agreement to arbitrate, this consent goes no farther than proceedings relating to enforcement of the arbitration agreement." (internal quotation marks omitted)); *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 835 (Tex. App. 2017) (observing that "federal courts have . . . concluded that an arbitration agreement does not constitute consent to suit in a forum for claims not pursued in arbitration"). Here, A-1 seeks injunctive relief and is not seeking to compel arbitration. Thus, A-1 has not established that the arbitration-forum-selection provision in Section 16 of the Employment Agreements confers personal jurisdiction over the Former Employees.[4]

At the motion hearing, counsel for A-1 informed this Court that it began arbitration proceedings against the Former Employees three days earlier. In light of this alleged commencement of arbitration, A-1 argued that Section 16 of the Employment Agreements confers personal jurisdiction over the Former Employees because Section 16 provides, in relevant part, that the Former Employees "consent to submit to the jurisdiction of any court,

---

[4]     On August 20, 2020, the day before the motion hearing, A-1 filed its brief in opposition to Defendants' motion to dismiss. The Court will not consider arguments made in briefing relating to motions *other than* the motion for a temporary restraining order, as Defendants' motion to dismiss has not been taken under advisement by the Court.

state or federal, in the State of ***Minnesota*** . . . to maintain the status quo through an injunction pending arbitration."  Defendants were not afforded a fair opportunity to respond to this argument because the alleged arbitration commenced after Defendants submitted their briefing in opposition to A-1's motion for a temporary restraining order.  Because these facts and arguments have been insufficiently developed on the current record, the Court declines to determine whether the allegedly pending arbitration proceedings enable this Court to exercise personal jurisdiction over the Former Employees.   However, assuming without deciding that Section 16 of the Employment Agreements confers personal jurisdiction over the Former Employees for the limited purpose of "maintain[ing] the status quo through an injunction pending arbitration," A-1 nonetheless has not demonstrated that it is entitled to the temporary restraining order it seeks.  As addressed below, because A-1 fails to establish that it will be irreparably harmed if the Former Employees are not enjoined, the extraordinary relief A-1 seeks is not warranted.

## II.   *Dataphase* Factors

When determining whether a temporary restraining order or preliminary injunction is warranted, a district court considers four factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and the injury that the injunction will inflict on other parties, and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  The burden rests with the moving party to establish that the "extraordinary remedy" of preliminary injunctive relief should be granted.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  Because a moving party's "failure to show irreparable harm is an

independently sufficient ground upon which to deny a preliminary injunction," *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (internal quotation marks omitted), the Court begins its analysis with this *Dataphase* factor.

### A.      Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To demonstrate a threat of irreparable harm, the harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted). A mere "possibility of harm" is insufficient. *Id.*; *accord S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."). A-1 asserts that it will suffer irreparable harm in connection with its breach-of-contract and confidentiality claims. The Court addresses the threat of irreparable harm with respect to each claim in turn.[5]

A-1 argues that it is entitled to a presumption of irreparable harm stemming from the Former Employees' alleged breaches of contract. Under Minnesota law, "[i]rreparable harm may be inferred from breach of a valid non-compete agreement if the former

---

[5]      Although A-1 raises five counts in its complaint, it argues that it will suffer irreparable harm only with respect to the alleged breaches of the Employment Agreements and the use or disclosure of confidential information. The Court, therefore, declines to consider the possibility of irreparable harm relating to A-1's other two counts alleging tortious conduct.

employee obtained a personal hold on the good will of the former employer." *Boston Sci. Corp. v. Duberg*, 754 F. Supp. 2d 1033, 1041 (D. Minn. 2010)  (internal quotation marks omitted); *see also Rosewood Mortg. Corp. v. Hefty*, 383 N.W.2d 456, 459 (Minn. Ct. App. 1986) (explaining that courts may presume irreparable harm when a professional employee acquires influence over clients of their employer).  Here, while A-1 presents evidence that the Former Employees had customer contact as part of their jobs, A-1 fails to specifically demonstrate whether or how the Former Employees obtained a unique hold on the goodwill of A-1's business through their customer contact.  Indeed, only one of the Former Employees, Lompe, is alleged to have held a sales position at A-1.  Moreover, A-1 fails to identify a single customer over whom the Former Employees have unique influence. Therefore, A-1 fails to demonstrate a presumption of irreparable harm on this basis.

A-1 also argues that its alleged losses "will result in the loss of competitive advantages that A-1 could never reclaim" and, consequently, A-1 will be irreparably harmed.  However, aside from these generalized claims of harm, the only alleged injuries that A-1 concretely identifies involve Freedom Fire bidding for the business of one of A-1's clients (with no evidence that the Former Employees solicited that client) and Freedom Fire working with one of A-1's vendors.  At best, A-1 claims general competition from Freedom Fire and the speculative potential to lose one specific customer to Freedom Fire. But harm suffered from lost customers can be measured by the lost profits on the business of those customers and, "[b]y definition, lost profits are 'reparable' through money damages." *Wells Fargo Ins. Servs. USA, Inc. v. King*, No. 15-CV-4378, 2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016); *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398,

403 (8th Cir. 2009) (concluding that harm that resulted from loss of customers could be remedied through damages); *Gen. Motors Corp.*, 563 F.3d at 319 (same).  Nothing in A-1's allegations suggests that the Former Employees' alleged breaches of contract present a non-speculative imminent threat of irreparable harm to A-1's business.  Accordingly, because the only concrete harms that A-1 has identified with respect to the Former Employees' alleged breaches of contract could be remedied through money damages, A-1 fails to meet its burden to demonstrate irreparable harm.

A-1 also argues that it will be "gravely harmed" if the Former Employees use or disclose confidential information as they "have apparently already done."  A-1 also argues that the Former Employees inevitably will use or disclose confidential information that they obtained at A-1 and thus "cripple A-1's competitive posture."  However, preliminary injunctive relief cannot be based on speculative harm.  *S.J.W. ex rel. Wilson*, 696 F.3d at 779.  A-1 fails to identify any concrete or specific harms that are likely to occur.  Absent evidence that the Former Employees are misusing or disclosing A-1's confidential information, the Court will not presume that they are doing so—or grant the extraordinary remedy of preliminary injunctive relief—based solely on A-1's speculative fears.

For these reasons, the harms that A-1 identifies do not constitute irreparable harm sufficient to warrant a temporary restraining order.

## B.     Remaining *Dataphase* Factors

A-1's failure to show irreparable harm is, by itself, a sufficient basis to deny A-1's motion for preliminary injunctive relief.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  Because A-1 fails to demonstrate irreparable harm, the Court declines

to address the remaining *Dataphase* factors.  *See, e.g.*, *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 934–35 (D. Minn. 2016) (denying motion for temporary restraining order based solely on plaintiff's failure to demonstrate irreparable harm); *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) (same).

In summary, the Court is mindful that a temporary restraining order is an extraordinary remedy.  A district court has broad discretion when ruling on requests for injunctive relief, *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004), and courts do not grant temporary restraining orders as a matter of right, *C.S. McCrossan Constr., Inc. v. Minn. Dep't of Transp.*, 946 F. Supp. 2d 851, 857 (D. Minn. 2013) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  On the limited record before the Court, A-1 fails to meet its burden of establishing that this Court has personal jurisdiction over Freedom Fire or the Former Employees.  Moreover, assuming without deciding that the Court has personal jurisdiction over the Former Employees for the limited purpose of issuing an injunction to maintain the status quo during the now-pending arbitration, A-1 fails to demonstrate a threat of irreparable harm.  Accordingly, the Court denies A-1's motion for such extraordinary relief.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff A-1 National Fire Co. LLC's motion for a temporary restraining order and expedited discovery, (Dkt. 8), is **DENIED**.

Dated:  August 31, 2020                          s/Wilhelmina M. Wright
                                                 Wilhelmina M. Wright
                                                 United States District Judge